In the United States Bankruptcy Court
for the District of Maryland

| | |
|---|---|
| In re: | Bankruptcy No. 14-2-0598 DER |
| **PHILLIP C. BOOTH, JR.** *and* **ROBIN L. BOOTH,** | Chapter 11 |
| *Debtors.* | **AMENDED CHAPTER 11 PLAN DATED FEBRUARY 5, 2016** |

**PHILLIP C. BOOTH, JR.** and **ROBIN L. BOOTH** (individually and collectively referred to herein as "Debtors"), Debtors-in-Possession, through the undersigned counsel, hereby submit to creditors, as proponent, this Amended Plan of Reorganization (the "Plan") pursuant to Section 1121, *et seq.,* of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the Plan and its implementation is found in the Disclosure Statement of even date herewith. The Plan should be read in conjunction with the Disclosure Statement. The Debtors urge creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

## ARTICLE I - DEFINITIONS

1.1     "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2     "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3     "Allowed Claim" means a Claim against the Debtors (a) which is listed in the Debtors' Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4     "Assets" means all property, real or personal, in which the Debtors has/have an interest.

CHUNG & PRESS, LLC
6404 IVY LANE SUITE 408
GREENBELT, MD 20770
(301) 924–4400
lawyer@brettweiss.com

1.5    "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6    "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7    "Bankruptcy Code" means Title 11 of the United States Code.

1.8    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Maryland, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9    "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10    "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtors. The Bar Date was **October 28, 2014** for all creditors except governmental units, and **December 29, 2014** for governmental units.

1.11    "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Maryland are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12    "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case Number 14-2-0598 DER.

1.13    "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14    "Claim" means a claim as defined in § 101(5) of the Code.

1.15    "Claimant" means a Person holding a Claim against the Debtors.

1.16    "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17    "Collateral" means any property or interest in property of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18    "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20 "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.22 "Creditor" means the holder of a Claim.

1.23 "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 "Debtor" and "Debtors" means Phillip C. Booth, Jr. and Robin L. Booth, individually and collectively.

1.25 "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26 "Disputed Claim" means a Claim:

(a) which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or

(b) which is listed as disputed under any provision of this Plan, or

(c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27 "Effective Date" means the date that is thirty (30) days after the Confirmation Order becomes a Final Order.

1.28 "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29 "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtors, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

CHUNG & PRESS, LLC
6404 IVY LANE SUITE 408
GREENBELT, MD 20770
(301) 924–4400
lawyer@brettweiss.com

– 3 –

1.30   "Estate" means the bankruptcy estate(s) of the Debtors. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31   "Executory Contracts" means all contracts, including unexpired leases, to which the Debtors were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtors.

1.32   "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33   "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34   "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35   "Lien" has the meaning set forth in §101(37) of the Code.

1.35A   "Material Default" of the Debtors shall occur if (1) Debtors fail to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtors and Debtors' attorney a written notice of Debtors' default; and (3) Debtors fail within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.36   "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.37   "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.38   "Petition Date" means **July 2, 2014,** the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtors.

1.39   "Plan" means this Plan, as it may be amended from time to time.

      1.40   "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

      1.41   "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

      1.42   "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

      1.43   "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

      1.44   "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

      1.45   "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

      1.46   "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtors with the Bankruptcy Court and any amendments thereto.

      1.47   "Secured Claim" means any Claim, debt, or demand against the Debtors as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtors, but only to the extent of the value of the Collateral as of the Confirmation Hearing.

      1.48   "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

      1.49   "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

      1.50   "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

Chung & Press, LLC
6404 Ivy Lane Suite 408
Greenbelt, MD 20770
(301) 924–4400
lawyer@brettweiss.com

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     Class A (Priority (non-tax) Claims):  Class A consists of Priority Claims under § 507 other than Administrative Claims and Priority Tax Claims.

2.2.    Class B-1 (Selene Finance, LP secured claim [Claim No. 13]): Class B-1 consists of the secured prepetition claim of Selene Finance, LP in the amount of $1,998,070.59 as of the filing date, secured by a first deed of trust on the Debtors' residence at 11543 Fox River Drive, Ellicott City, Maryland.

2.3     Class B-2 (Internal Revenue Service [Claim No. 4]): Class B-2 consists of the secured prepetition claim of Internal Revenue Service in the amount of $54,831.51 as of the filing date, secured by a tax lien on all of the Debtors' real and personal property.

2.4     Class B-3 (Council of Unit Owners of Homewood Crossing Homeowners Association, Inc. [Claim No. 3]): Class B-3 consists of the secured prepetition claim of Council of Unit Owners of Homewood Crossing Homeowners Association, Inc. in the amount of $8,566.42 as of the filing date, secured by a lien on the Debtors' residence at 11543 Fox River Drive, Ellicott City, Maryland.

2.5.    Class B-4 (De Lange Landen Financial Services [Claim No. 10]): Class B-4 consists of the secured prepetition claim of De Lange Landen Financial Services in the amount of $61,128.80 as of the filing date, which is secured by a UCC-1 in certain equipment.

2.6     Class B-5 (Wells Fargo Bank, N.A. [Claim 12]): Class B-5 consists of the secured prepetition claim of Wells Fargo Bank (Claim No. 12), in the amount of $44,081.77 as of the filing date, secured by a deed of trust on the Debtors' investment property at 7 Courtland Woods Circle, Baltimore, Maryland.

2.7     Class B-6 (PNC Bank [no Proof of Claim filed]): Class B-6 consists of the secured claim of PNC Bank (no Proof of Claim filed) in the approximate amount of $191,556.38 as of the filing date, secured by a second deed of trust against the Debtors' residence at 11543 Fox River Drive, Ellicott City, Maryland.

2.8     Class B-7 (Bank of America, N.A. [no Proof of Claim filed]): Class B-7 consists of the secured claim of Bank of America, N.A. (no Proof of Claim filed) in the approximate amount of $150,000.00 as of the filing date, secured by a deed of trust against the Debtors' investment property at 7 Courtland Woods Circle, Baltimore, Maryland.

2.9     Class C (General Unsecured Claims): Class C consists of all general unsecured claims against the Debtor.

## ARTICLE III– TREATMENT OF CLAIMS AND INTERESTS

3.1. <u>Administrative Expenses (Unclassified):</u> Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

The total unpaid professional fees as of the date of this Plan are estimated to be approximately $35,000.00, a portion of which is covered by the prepetition retainer. The Debtor is unaware of any other unpaid administrative expense claims.

Within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the Effective Date, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

3.2 <u>Unclassified Tax Claims:</u> The Internal Revenue Service ("IRS") filed a Proof of Claim (Claim No. 4) asserting a priority claim of $261,959.02. The vast majority of this claim resulted from the Accupay embezzlement scandal, where the Debtors' company, Booth Management Consultants, LLC (hereinafter, "BMC"), paid Accupay the required withholding taxes, and Accupay failed to pay the IRS. Of the priority claim, $253,037.02 is related to the Accupay situation (hereinafter, the "Accupay Priority Tax Debt"), and $6,922.00 is related to the Debtors' individual income tax obligations (hereinafter, the "Individual Priority Tax Debt"). The IRS claim shall be paid in full, as follows: The Accupay Priority Tax Debt will be paid in full over 48 months pursuant to 11 U.S.C. § 1129(a)(9)(C), with simple interest at the rate of 3% *per annum*, in equal monthly cash payments of $4,547.00[1] commencing on the Effective Date of the Plan, unless a different treatment is agreed to or provided for in the Plan. The Individual Priority Tax Debt shall be paid in full over 48 months pursuant to 11 U.S.C. § 1129(a)(9)(C), with simple interest at the rate of 3% *per annum*, in equal monthly cash payments of $153.21[2] commencing on the Effective Date of the Plan, unless a different treatment is agreed to or provided for in the Plan.

3.3. *Class A (Priority (non-tax) Claims).* Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. There are no claims in this class.

---

[1] Since BMC has made a number of payments on this claim after the case was filed, the monthly payment may be adjusted so that this claim is paid in full pursuant to § 1129(a)(9)(C).
[2] Since BMC has made a number of payments on this claim after the case was filed, the monthly payment may be adjusted so that this claim is paid in full pursuant to § 1129(a)(9)(C).

CHUNG & PRESS, LLC
6404 IVY LANE SUITE 408
GREENBELT, MD 20770
(301) 924–4400
lawyer@brettweiss.com

3.4. *Class B-1 (Selene Finance, LP secured claim).* Class B-1 consists of the secured claim of Selene Finance, LP (Claim No. 13) secured by a deed of trust on the Debtors' residence at 11543 Fox River Drive, Ellicott City, Maryland 21042 in the amount of $1,998,070.59 as of the filing date. Except as provided for herein, this creditor shall retain its lien, and this claim shall be paid in accordance with the contractual terms thereof. All arrearages as of the Effective Date of the Plan, which are believed to be approximately $35,000.00, shall be paid in monthly installments of $1,149.58, without interest, commencing on the first day of the first month following the Effective Date of the Plan. Any unpaid arrearage balance shall be due in full on the existing Maturity Date of the loan. Debtors shall resume their regular monthly payments beginning on the first day of the first month following the Effective Date of the Plan. Tax and insurance payments will continue to be escrowed with this creditor.

3.5 *Class B-2 (Internal Revenue Service secured claim).* Class B-2 consists of the secured claim of the Internal Revenue Service (Claim No. 4) in the amount of $54,831.51, secured by a tax lien on all of the Debtors' real and personal property. A substantial portion of this claim resulted from the Accupay embezzlement scandal, where BMC paid Accupay the required withholding taxes, and Accupay failed to pay the IRS. Of the secured claim, $15,971.60 is related to the Accupay situation (hereinafter, the "Accupay Secured Tax Debt"), and $38,859.91 is related to the Debtors' individual income tax obligations (hereinafter, the "Individual Secured Tax Debt"). The IRS claim shall be paid in full, as follows: The Accupay Secured Tax Debt will be paid in full over 48 months pursuant to 11 U.S.C. § 1129(a)(9)(C), with simple interest at the rate of 3% *per annum*, in equal monthly cash payments of $985.00[3] commencing on the Effective Date of the Plan, unless a different treatment is agreed to or provided for in the Plan. The Individual Secured Tax Debt shall be paid in full over 48 months pursuant to 11 U.S.C. § 1129(a)(9)(C), with simple interest at the rate of 3% *per annum*, in equal monthly cash payments of $860.14[4] commencing on the Effective Date of the Plan, unless a different treatment is agreed to or provided for in the Plan.

3.6 *Class B-3 (Council of Unit Owners of Homewood Crossing Homeowners Association, Inc. secured claim).* Class B-3 consists of the secured claim of Council of Unit Owners of Homewood Crossing Homeowners Association, Inc. (Claim No. 3) in the amount of $8,566.42, secured by a lien on the Debtors' residence at 11543 Fox River Drive, Ellicott City, Maryland 21042, which lien of trust is wholly unsecured pursuant to 11 U.S.C. § 506(a). Class B-3 shall be treated as part of Class C for voting and distribution purposes. The property securing the claim of this creditor shall be valued under 11 U.S.C. § 506(a) at $1,507,700.00 as of the effective date of the plan, pursuant to the value stated in this creditor's claim. As the claim of Selene Finance, LP for its deed of trust reflects a Principal Balance of $1,998,070.59, which is greater than the value of the collat-

---

[3] Since BMC has made a number of payments on this claim after the case was filed, the monthly payment may be adjusted so that this claim is paid in full pursuant to § 1129(a)(9)(C).

[4] Since BMC has made a number of payments on this claim after the case was filed, the monthly payment may be adjusted so that this claim is paid in full pursuant to § 1129(a)(9)(C).

eral, the Class B-3 claim is wholly unsecured and shall be treated for all purposes as a Class C claim, and the lien securing the Class B-3 claim shall be deemed void under 11 U.S.C. § 506 upon confirmation. The Debtors may file a notice that the lien has been avoided in the Howard County land records. If the holder of the Class B-3 claim disputes this valuation of the collateral and contends that it is not wholly unsecured, it must timely file an objection to confirmation, or the value stated by Debtors will be determined to be the value of the collateral and it will be deemed wholly unsecured. Debtors have filed a motion to avoid this creditor's lien and are seeking treatment of this class consistent with the language of this paragraph.

      3.7.    *Class B-4 (De Lange Landen Financial Services secured claim).* Class B-4 consists of the secured claim of De Lange Landen Financial Services (Claim No. 10) in the amount of $61,128.80, secured by a UCC-1 in certain equipment. This claim has been withdrawn, and no debt is owed this class.

      3.8.    *Class B-5 (Wells Fargo Bank, N.A. secured claim).* Class B-5 consists of the secured claim of Wells Fargo Bank, N.A. (Claim No. 12) in the amount of $44,081.77, secured by a deed of trust on the Debtors' investment property at 7 Courtland Woods Circle, Baltimore, Maryland 21208. Except as provided for herein, this creditor shall retain its lien, and this claim shall be paid in accordance with the contractual terms thereof. By agreement, all arrearages as of the Effective Date of the Plan, which are believed to be approximately $2,000.00, shall be paid in equal monthly installments over 30 months, without interest, beginning on September 1, 2019. Debtors shall resume their regular monthly payments beginning on the first day of the first month following the Effective Date of the Plan. Tax and insurance payments will continue to be escrowed with this creditor.

      3.9    *Class B-6 (PNC Bank secured claim).* Class B-6 consists of the secured claim of PNC Bank (no Proof of Claim filed) in the approximate amount of $191,556.38, secured by a second mortgage/deed of trust on the Debtors' residence at 11543 Fox River Drive, Ellicott City, Maryland 21042, which lien of trust is wholly unsecured pursuant to 11 U.S.C. § 506(a). Class B-6 shall be treated as part of Class C for voting and distribution purposes. The property securing the claim of this creditor shall be valued under 11 U.S.C. § 506(a) at $1,507,700.00 as of the effective date of the plan, pursuant to the value stated in the Class B-3 creditor's claim. As the claim of Selene Finance, LP for its deed of trust reflects a Principal Balance of $1,998,070.59, which is greater than the value of the collateral, the Class B-6 claim is wholly unsecured and shall be treated for all purposes as a Class C claim, and the lien securing the Class B-6 claim shall be deemed void under 11 U.S.C. § 506 upon confirmation. The Debtors may file a notice that the lien has been avoided in the Howard County land records. If the holder of the Class B-6 claim disputes this valuation of the collateral and contends that it is not wholly unsecured, it must timely file an objection to confirmation, or the value stated by Debtors will be determined to be the value of the collateral and it will be deemed wholly unsecured. Debtors have filed a motion to avoid this creditor's lien and are seeking treatment of this class consistent with the language of this paragraph.

     3.10   *Class B-7 (Bank of America, N.A. secured claim).* Class B-7 consists of the secured claim of Bank of America, N.A. (no Proof of Claim filed) in the approximate amount of $150,000.00, secured by an Indemnity Deed of Trust on the Debtors' investment property at 7 Courtland Woods Circle, Baltimore, Maryland 21208. Class B-7 shall be treated as part of Class C for voting and distribution purposes. The property securing the claim of this creditor shall be valued under 11 U.S.C. § 506(a) at $163,048.00 as of the effective date of the plan, pursuant to the value stated in the attached Zillow valuation. The secured claim of Wells Fargo Bank, N.A., in the amount of $44,081.77, has priority over the lien of the Class B-7 creditor, resulting in a secured portion of the Class B-7 claim being $118,966.23. If the Class B-7 creditor disputes the value of the collateral stated above, it must timely file an objection to confirmation, or the value stated by Debtors will be determined to be the value of the collateral. The balance of the claim shall be treated for all purposes as an unsecured Class C claim. The secured portion of the claim, $118,966.23, shall be paid in 360 monthly payments of $585.24 ($118,966.23 amortized over 30 years at an interest rate of 4.25% per annum), plus any escrow deposit for taxes and insurance as provided in the existing loan documents. Debtors have filed a motion to value the collateral securing this claim, and are seeking treatment of this class consistent with the language of this paragraph.

     3.11   *Class C (General Unsecured Claims).* Class C consists of all general unsecured claims against the Debtors, including any unsecured portion of Class B-3, B-4 and B-6. Holders of Class C claims shall be paid a total of $100,000.00, in one payment of $5,000.00 on the Effective Date pursuant to the provisions of Section XII(c) and in 23 consecutive monthly payments of $4,000.00 and one payment of $3,000.00, the first such payment being made on the first day of the first month following the completion of payments to Class A and B-2 creditors. The *pro rata* share of the claimed amount of any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account until a Final Order is entered. When Final Orders are entered disallowing or allowing and liquidating all Class C claims, the remaining funds in the bank account shall be distributed to the holders of all Class C claims *pro rata*. Payments on Class C claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. Any check of $1,000.00 or less mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtors.

     3.12   *Class D (Equity Interests).* Class D consists of existing equity interests in the estate. If the absolute priority rule applies, the Debtors shall retain their existing equity interests in the estate upon payment to the estate on the Effective Date of $5,000.00 in new value from assets that are exempt or are not property of the estate.

### ARTICLE IV - EXECUTION OF PLAN

CHUNG & PRESS, LLC
6404 IVY LANE SUITE 408
GREENBELT, MD 20770
(301) 924–4400
lawyer@brettweiss.com

The Debtors shall fund this Plan with income from wages/commissions/rents and, to the extent necessary to comply with the requirements of § 1129(b)(2), from non-estate corporate, family and/or exempt assets, as described below. The Debtors shall retain the assets of the estate, and shall pay ordinary living expenses, pay the operating expenses for the real estate, and pay the creditors the amounts set forth in the Plan from the proceeds thereof. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtors reserve the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtors may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtors or the estate shall not bar any claim by the Debtors against the holder of such claim.

This section applies if Class C does not vote for the Plan. On the Effective Date of the Plan, the Debtors' existing equity interests in the Estate shall be cancelled. Debtors will pay the sum of $5,000.00 as new value to reacquire the equity in the Estate, which new sum will come from their business, family or other sources that are exempt and/or are not property of the Estate. This sum will be paid to the Class C creditors.

## ARTICLE V - RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtors, the Debtors' operations and Assets for the following purposes until the Court enters an Order closing the case:

A. To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtors to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtors' right to object to such claim in whole or in part;

B. To hear and determine all adversary proceedings and contested matters;

C. To allow and approve or disapprove any administrative expenses not previously allowed;

D. To determine and resolve questions concerning the existence of defaults under the Plan;

E. To modify the Plan pursuant to § 1127(b) of the Code;

F. To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

CHUNG & PRESS, LLC
6404 IVY LANE SUITE 408
GREENBELT, MD 20770
(301) 924–4400
lawyer@brettweiss.com

G.    To issue any Order necessary to carry out the Plan.

Notwithstanding the foregoing, the Confirmation Order shall entitle the Debtors to manage their financial affairs without further Order of the Court, and shall permit the Debtors in their discretion to obtain new and additional credit and/or loans from any source, which credit or loans may be secured by the Debtors' assets, without further Order of the Bankruptcy Court.

### ARTICLE VI - EXECUTORY CONTRACTS AND LEASES

1.    This Plan shall constitute a motion to reject all executory contracts and unexpired leases that remain with the Estate, if any. (It is not believed that any such contracts or leases exist.) The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, and a finding that such rejections are in the best interest of the Debtors, their Estate and all parties in interest in this Case. The Debtors reserve the right to assume any executory contract or unexpired lease not previously assumed. If the Debtors determine that it is in the best interests of the Estate to assume an executory contract or unexpired lease, the Debtors shall file, at least ten (10) days before the Confirmation Hearing, an exhibit to this Plan identifying those executory contracts and unexpired leases that the Debtors intend to assume.

2.    Any claim arising from the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Debtors no later than 30 days after the Effective Date. Any such claim for which a Proof of Claim is not timely filed will be forever barred from assertion against the Debtors, the Estate, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Unless otherwise ordered by the Bankruptcy Court, all such claims that are timely filed as provided herein shall be treated as Class C claims under this Plan and shall be subject to all of the provisions of this Plan. The Debtors reserve the right to object to any such claim.

### ARTICLE VII - MODIFICATION OF PLAN

The Debtors may submit modifications to the Plan at any time before Confirmation pursuant to § 1127(a) of the Code, and thereafter in accordance with § 1127(b) or (e). After confirmation, the plan may be modified pursuant to § 1127(e).

### ARTICLE VIII - DISCHARGE AND CLOSING

Upon completion of all payments due to the general unsecured creditors and order of Court, the Debtors shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code (which shall include the Class B and C claims).

### ARTICLE IX - MISCELLANEOUS

No creditor may take any collection action against Debtors or property of the estate or of the Debtors so long as Debtors are not in Material Default as to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtors pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtors undertake in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtors' obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

February 11, 2016                    Respectfully submitted,

                                            CHUNG & PRESS, LLC

                                            By:  ___/s/ Brett Weiss_____
                                                 Brett Weiss, Bar No. 02980
                                                 6404 Ivy Lane, Suite 730
                                                 Greenbelt, Maryland 20770
                                                 (301) 924-4400
                                                 lawyer@brettweiss.com